# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ALEC T. SABINA et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:14-cv-160-JDL |
| JP MORGAN CHASE BANK NA, ) | |
| ) | |
| Defendant, ) | |
| ------------------------------------ | |
| JONATHAN A. QUEBBEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 2:14-cv-177-JDL |
| ) | |
| BANK OF AMERICA, N. A. ) | |
| ) | |
| Defendant, ) | |
| ------------------------------------ | |
| STANLEY M. NICKERSON et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 2:14-cv-189-JDL |
| ) | |
| TD BANK, N.A., ) | |
| ) | |
| Defendant, ) | |
| ------------------------------------ | |
| ALEC T. SABINA et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 2:14-cv-227-JDL |
| ) | |
| WELLS FARGO HOME MORTGAGE, ) | |
| INC. ) | |
| ) | |
| Defendant. ) | |

## ORDER ON PLAINTIFFS' MOTIONS TO REMAND

The plaintiffs in these four separate actions have filed Motions to Remand that present identical questions of law. After careful review, I conclude that the Motions to Remand should be **GRANTED**.

## I. INTRODUCTION AND FACTUAL BACKGROUND

These actions involve claims brought against the defendant banks alleging violations of 33 M.R.S. § 551 (2014), a Maine consumer protection statute. The statute requires mortgagees to mail a copy of a mortgage release to the respective mortgagor within 30 days of receiving the recorded release from the Registry of Deeds. 33 M.R.S. § 551 (2014). Plaintiffs filed class action complaints in the Cumberland County Superior Court on behalf of themselves and others similarly situated alleging that the defendant banks, as mortgagees, failed to mail them the required releases. Wells Fargo ECF No. 5-7; JP Morgan ECF No. 1-5; TD Bank ECF No. 1-3; Bank of America ECF No. 3-5.[1] Each plaintiff seeks damages, reasonable attorney's fees, interest, costs, and expenses. Bank of America ECF No. 3-5 at 9; JP Morgan ECF No. 1-5 at 8; TD Bank ECF No. 1-3 at 8; Wells Fargo ECF No. 1-9 at 8.

The banks removed the state actions to this court, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332(a). JP Morgan ECF No. 1 at 3; Bank of

---

[1] Alec T. and Emma L. Sabina (collectively, "the Sabinas") filed an action against Wells Fargo Home Mortgage, Inc., on March 20, 2014, followed by an action against JP Morgan Chase Bank, N.A. ("JP Morgan") on March 28. Wells Fargo ECF No. 5-7 at 9; JP Morgan ECF No. 1-5 at 9. Stanley M. Nickerson and Arlene W. Nickerson (collectively, "the Nickersons") filed their complaint against TD Bank, N.A. ("TD Bank") on March 20. TD Bank ECF No. 1-3 at 9. Jonathan A. Quebbeman ("Quebbeman") brought suit against Bank of America, N.A. ("Bank of America") on March 20. Bank of America ECF No. 3-5 at 9.

America ECF No. 1 at 4; TD Bank ECF No. 1 at 1; Wells Fargo ECF No. 1 at 4. Additionally, Bank of America invokes jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).[2] Bank of America ECF No. 1 at 7.

The plaintiffs have moved to remand the actions to state court, asserting that the amount in controversy requirements for diversity and CAFA jurisdiction have not been satisfied. Wells Fargo ECF No. 14; JP Morgan ECF No. 4; Bank of America ECF No. 13; TD Bank ECF No. 11. The Sabinas and Nickersons further contend that the motions to remove filed by Wells Fargo and TD Bank, respectively, are untimely. Wells Fargo ECF No. 14; TD Bank ECF No. 11. All plaintiffs seek attorney's fees on the ground that the banks acted unreasonably by removing the actions. Wells Fargo ECF No. 14; JP Morgan ECF No. 4; Bank of America ECF No. 13; TD Bank ECF No. 11.

For diversity jurisdiction purposes, the citizenship of the parties is as follows: the Sabinas are citizens of Maine, and Wells Fargo is a citizen of South Dakota. Wells Fargo ECF No. 1 at 5-6. JP Morgan is a citizen of Ohio. JP Morgan ECF No. 1 at 3. The Nickersons are citizens of Maine, while TD Bank has designated its main office in Delaware, with its principal place of business in New Jersey. TD Bank ECF No. 1 at 1. Lastly, Quebbeman is a citizen of Colorado, while Bank of America is a citizen of North Carolina. Bank of America ECF No. 1 at 4.

---

[2] TD Bank did not originally invoke CAFA jurisdiction in its Notice of Removal. However, TD Bank addressed and asserted CAFA jurisdiction in its briefs on this motion after the Nickersons raised the issue. At oral argument, TD Bank clarified that it is not relying on CAFA jurisdiction. TD Bank ECF No. 22 at 69. Based on this clarification, I do not address CAFA jurisdiction with respect to TD Bank.

## II. DIVERSITY JURISDICTION

**A.    Governing Law**

This court has original jurisdiction over civil actions where complete diversity exists between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *Strawbridge v. Curtiss*, 7 U.S. 267 (1806). The party seeking to invoke federal jurisdiction bears the burden of demonstrating that jurisdiction is proper. *Coventry Sewage Assoc. v. Dworkin Realty Co.*, 71 F.3d 1, 4 (1st Cir. 1995). A party must carry this burden by showing a "reasonable probability" that jurisdiction exists. *See Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41 (1st Cir. 2009) (applying the reasonable probability standard in a removal action based on CAFA jurisdiction). A reasonable probability is, for all intents and purposes, the same standard as a preponderance of the evidence. *Id.* at 50.

The mortgage release statute at issue in this case provides that a prevailing party may be awarded costs and reasonable attorney's fees. 33 M.R.S. § 551. Costs may not be included in the amount in controversy requirement. 28 U.S.C. § 1332(a). It is well-settled that in a case where a statute provides for the recovery of attorney's fees by a prevailing party, such fees may be used to satisfy the amount in controversy. *Spielman v. Genzyme Corp.*, 251 F.3d 1, 7 (1st Cir. 2001). However, a party invoking diversity jurisdiction in a class action case may not aggregate the attorney's fees of the class in order to reach this threshold. *Id.* at 10. While the attorney's fees attributable to an individual claimant, then, may be used to make up the amount in

4

controversy, *see id.* at 7, any class-related attorney's fees must be prorated across the class for these purposes, *see Karofsky v. Abbott Laboratories*, 921 F. Supp. 18, 20 (D. Me. 1996). Because the parties have not presented sufficient evidence to allow for a proration analysis, my inquiry focuses on the attorney's fees attributable to an individual plaintiff.

In making a jurisdictional determination such as this, the court is bound to "rigorously enforce the jurisdictional limits that Congress chooses to set. . . ." *Coventry Sewage*, 71 F.3d at 4. To appropriately respect the boundaries of the federal courts' limited jurisdiction, all doubts in this area are resolved against removal and in favor of a remand to state court. *See, e.g.*, *Rosselló-Gonzalez v. Caldéron-Serra*, 398 F.3d 1 at 11 (1st Cir. 2004); *Harris Mgmt., Inc. v. Coulombe*, 2014 WL 4723096 at 2 (D. Me. Sept. 23, 2014); *English v. Bank of America, N.A.*, 2013 WL 6448672 at 5 (D. Me. Dec. 9, 2013).

**B.     Legal Analysis**

It is undisputed that complete diversity of citizenship is present in each of these cases. *See supra.* With respect to the amount in controversy requirement, the mortgage release statute at issue limits recoverable damages to $500, 33 M.R.S. § 551, meaning that each plaintiff's prayers for damages have placed only $500 in controversy. Whether diversity jurisdiction exists, then, turns on whether the banks have shown that it is more likely than not that the reasonable attorney's fees in the named plaintiff's individual cases will exceed $74,500. I conclude that they have not.[3]

---

[3] While the instant cases have not been formally consolidated, combined oral argument was heard on the motions to remand against all four defendants. *See, e.g.*, Wells Fargo ECF No. 23. At the hearing,

5

In order to demonstrate that the attorney's fees in each named plaintiff's case are likely to exceed $74,500, the defendants rely on fee estimates that address both the estimated hourly rates of plaintiffs' counsel and the potential hours that counsel will bill in this litigation. *See* Bank of America ECF No. 22-1 at 1 (projecting $80,575 in attorney's fees); JP Morgan ECF No. 1 at 5 (calculating that plaintiff's attorney's fees could reach $74,500 with 252 hours billed at an average hourly rate of $300); Wells Fargo ECF No. 17 at 13 (estimating that plaintiff's attorney's fees could reach $74,500 with 308 hours billed equally between partners billing $350 an hour and associates billing $185 an hour); TD Bank ECF No. 1 at 2 (calculating that plaintiff's attorney's fees could reach $74,500 with 252 hours billed at an average hourly rate of $300). Because the plaintiffs have offered little specific information regarding what their attorney's fees may be, *see* Wells Fargo ECF No. 23 at 7, the accuracy of the banks' estimates is my principal focus.

1. **Projected Hourly Rates**

The projected hourly rates employed by the banks are based in part upon affidavits submitted by counsel for Bank of America ("Aromando Affidavit") and by plaintiffs' counsel's firm, Bernstein Shur, in a 2013 case ("Bernstein Affidavit"). Bank of America ECF No. 22; Wells Fargo ECF No. 1-7. The Aromando Affidavit estimates, based on counsel's own experience as an attorney in private practice, that the

---

the banks agreed that counsel for Bank of America would present argument on the issues common to all defendants. *Id.* at 5-6. Given this somewhat unique posture, I will aggregate the showings made by each defendant as to the amount in controversy, and treat this body of material as if it had been presented by each defendant individually.

Bernstein Shur attorneys who appear in these actions bill from $205 to $350 per hour. Bank of America ECF No. 22 at 2. The Bernstein Affidavit reveals that in a 2013 bankruptcy action, Bernstein Shur attorneys charged hourly rates of between $335 and $375 for shareholders, between $165 and $255 for associates, and between $140 and $145 for paralegals. Wells Fargo ECF No. 1-7 at 7. These affidavits provide enough evidence to support a showing that the attorneys' hourly rates in these cases are likely to be similar.

### 2. Projected Blended Rates

More problematic, however, is the manner in which the banks employ the blended rate in their fee estimates. The Aromando Affidavit assumes a blended rate of $275 for plaintiffs' counsel. Bank of America ECF No. 22 at 2. With the Aromando Affidavit estimating that the associate on plaintiffs' cases bills $205 per hour with one shareholder billing $350, *id*, the proposed blended rate roughly corresponds to an equal division of time, on every task, between the firms' partner and associate attorneys. Wells Fargo makes a similar assumption in its materials. *See* Wells Fargo ECF No. 17 at 13 (estimating equal division of time between partners and associates). I find it unreasonable to assume such a division of labor.

### 3. Projected Billable Hours

With respect to the projected time that plaintiffs' counsel will spend on this litigation, the banks estimate that each case could generate between 252 and 308 billable hours. *See, e.g.*, JP Morgan ECF No. 1 at 5; Wells Fargo ECF No. 17 at 13. These various projections are based in part on defendants' proclaimed commitments

to litigate each of these cases through dispositive motions, trial, and appeal. *See, e.g.*, Wells Fargo ECF No. 1 at 9-11.  More specifically, the banks have put forward an itemized estimate of potential attorney's fees at each stage of the litigation, projecting, for example, that each case could involve plaintiffs' counsel expending 20 hours defending a motion to dismiss, 12 hours in written discovery, 30 hours in summary judgment practice, and 36 hours in trial preparation.  *See* Bank of America ECF No. 22-1 at 1-2.  The banks further support their estimates by citing billable hour figures from other cases litigated by plaintiffs' counsel's law firm, noting that Bernstein Shur billed 538.1 hours to take a trademark infringement case through summary judgment, and 288.4 hours for prevailing on a motion to dismiss in an ERISA action.  Wells Fargo ECF No. 17 at 15-16.

The banks' billable hour estimates are problematic in several respects. Critically, the estimates fail to account for the factual simplicity of the plaintiffs' individual claims.  In any named plaintiff's case, the central factual question on which the defendant banks' liability rests centers on whether and when a single mortgage release was mailed to a single mortgagor.  *See* 33 M.R.S. § 551 (establishing liability "[i]f the release is not sent by first class mail to the mortgagor's address . . . within 30 days.").  Resolution of this factual issue as to each individual plaintiff should require only limited discovery.  Yet the banks suggest that each case may require plaintiff's counsel to bill 72 hours for all aspects of discovery.  Bank of America ECF No. 22-1 at 1.  Moreover, it appears that the banks have reached their fee estimates, in some instances, by including class-related attorney's fees when the appropriate inquiry is

what fees would be in an individual case. For example, TD Bank bases its fee estimate in part on the extent of the discovery already served on it – some of which is clearly aimed at the facts of the putative class action. TD Bank ECF No. 17 at 7 (citing a request for "[d]ocuments evidencing or reflecting all mortgage releases . . . in the State of Maine."). Finally, the billable hour's figures in the ERISA and trademark infringement cases cited by the banks cannot support a finding that the billable hours will be similar here. The trademark infringement case, *Nationwide Payment Solutions, LLC v. Plunkett*, 2011 WL 446077 (D. Me. Feb. 3, 2011), involved litigation on seven counts, including statutory trademark infringement, common law trademark infringement, cybersquatting, unfair competition, violation of Maine's Deceptive Trade Practices Act, and the breach of a loan agreement. *Id.* at 9. The ERISA case, *Curran v. Camden National Corporation*, 477 F. Supp. 2d 247 (D. Me. 2007), involved six separate counts, including multiple breach of contract claims in addition to the ERISA claim. *Id.* at 252-253. These cases are notably more complex than those before me, which, on an individual level, involve only one count arising under a single state statute.

4. **Conclusion**

In sum, the evidence put forward by the banks establishes that it is possible for the named plaintiff's attorney's fees in any of the four cases to exceed $74,500. The controlling question, though, is whether such a result is reasonably *probable*, not merely possible. *See Amoche*, 556 F.3d at 49. The inquiry required to resolve this question is, admittedly, imprecise and rests on a record that is conjectural.

9

Notwithstanding this uncertainty, I am left with the firm conviction that whether any of the plaintiff's attorney's fees in these cases will reach $74,500 remains no more likely than not. When the existence of jurisdiction is ambiguous, the limited nature of federal jurisdiction calls upon me to resolve the ambiguity in favor of remand. *See, e.g.*, *Rosselló-Gonzalez*, 398 F.3d at 11; *Harris Mgmt., Inc.*, 2014 WL 4723096 at 2; *English*, 2013 WL 6448672 at 5. Accordingly, I conclude that defendants have not met their burden of demonstrating a reasonable probability that the attorney's fees in a named plaintiff's individual case will exceed $74,500. Accordingly, diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) is not present.

### III. CLASS ACTION FAIRNESS ACT JURISDICTION

Bank of America asserts that this court also has jurisdiction under 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). CAFA provides for federal jurisdiction over certain class actions in which minimum diversity exists and the amount in controversy is at least $5,000,000. 28 U.S.C. § 1332(d)(2). Unlike diversity jurisdiction, CAFA jurisdiction allows for the aggregation of class claims, including class-related attorney's fees, in order to meet this jurisdictional requirement. *See* 28 U.S.C. § 1332(d)(6). As with diversity jurisdiction, under CAFA a removing defendant has the burden of showing a reasonable probability that the amount in controversy meets the jurisdictional threshold. *Amoche*, 556 F.3d at 43.

Bank of America has not met its burden. In contrast to Quebbeman's estimate that the putative class numbers "in the hundreds or greater", Bank of America ECF No. 3-5 at 6, Bank of America estimates that the potential class size could be as great as 13,072 – the total number of mortgages released by the bank in Maine since the

enactment of 33 M.R.S. § 551. Bank of America ECF No. 1 at 8. This number would push the amount in controversy over $5,000,000 even without accounting for attorney's fees. *Id.* at 9. Asserting that the class *could* number 13,072, however, does not make the fact of a class containing every possible mortgagor more probable than not. Perhaps recognizing that such a scenario is not plausible, Bank of America further estimates that CAFA's jurisdictional minimum could still be satisfied if "only 60%" of the possible class of mortgagors were counted in the putative class. *Id*. This estimate is not grounded in any concrete data or methodology. Bank of America's estimate is simply too speculative to satisfy the defendant's burden of proof to the standard of a reasonable probability.

The First Circuit recently addressed CAFA's amount in controversy requirement in *Romulus v. CVS Pharmacy, Inc.*, 2014 WL 5422160 (1st Cir. 2014), finding that a defendant's estimates as to the jurisdictional threshold were sufficient to meet the reasonable probability standard. That case is distinguishable. In *Romulus*, the First Circuit found that the number of alleged employment law violations at issue was certain for purposes of the amount in controversy, allowing for the calculation of an estimate that satisfied the reasonable probability standard. *See id.* at 11-13. Here, in contrast, the parties differ by substantial amounts in their assessments of the putative class size, and the limited evidence advanced by Bank of America does not persuade me to adopt its assessment.

I conclude that CAFA jurisdiction has not been established by Bank of America.

## IV. TIMELINESS OF REMOVAL

Because I find that the removal of these cases by the banks was improper, I do not reach the issue of whether Wells Fargo and TD Bank's removals were timely.

## V. ATTORNEY'S FEES

In their Motions to Remand, plaintiffs request an award for the attorney's fees they have incurred as a result of defendants' removals to this court, pursuant to 28 U.S.C. § 1447(c). Under the statute, attorney's fees may be granted "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

The fact that the banks were unable to meet their burden of demonstrating a reasonable probability that the attorney's fees in an individual case would exceed $74,500 does not mean that it was unreasonable for them to have made such an argument to begin with. As reflected in my analysis of diversity jurisdiction, the banks had a reasonable basis on which to seek removal. I therefore decline to award attorney's fees to the plaintiffs under 28 U.S.C. § 1447(c).

## VI. CONCLUSION

For the foregoing reasons, plaintiffs' Motions to Remand are **GRANTED**. Because these actions are remanded, the motion to dismiss pending in each action is rendered moot. The Clerk shall wait until the expiration of the applicable appeal period before remanding this case to the Maine Superior Court. *See* 28 U.S.C. § 1453(c)(1).

**SO ORDERED**.   /s/ Jon D. Levy
                  U.S. District Judge

Dated this 29th day of October, 2014.